## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-23661-BLOOM/Louis

MENA CATERING, INC.,

      Plaintiff,

v.

SCOTTSDALE INSURANCE
COMPANY,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, ECF No. [11] ("Motion"). Plaintiff filed a response in opposition, ECF No. [17] ("Response"), to which Defendant filed a reply, ECF No. [24] ("Reply"). Defendant also filed a Notice of Filing Supplemental Authority in Support of its Motion, ECF No. [25]. The Court has considered the Motion, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.      BACKGROUND

This matter stems from a lawsuit Plaintiff Mena Catering, Inc. initiated in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendant Scottsdale Insurance Company on June 24, 2020. ECF No. [11-1] ("Complaint"). Defendant removed this lawsuit to this Court on September 2, 2020, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. [1].

According to the Complaint, Plaintiff is the owner and operator of a food catering company in Miami, Florida. ECF No. [1-1] at ¶ 1. Plaintiff entered into a surplus line commercial property insurance contract with Defendant to protect its business under a policy bearing Policy No.

CPS3169238 ("Policy"),[1] effective May 25, 2019. *Id.* at ¶¶ 10-11. Plaintiff alleges that "[a]s a result of Florida's efforts to slow the spread of the SARS-CoV-2 global pandemic ["COVID-19"]" and government executive orders, Plaintiff "was forced to cease its regular business operations and sustain business interruption losses." *Id.* at ¶ 1. Specifically, in March 2020, state and county authorities in response to national and statewide public health emergencies "prohibited the use and occupancy of non-essential businesses, thereby affecting and preventing access to the Insured Property," and "[b]ased upon the closure of nearby non-essential businesses and the cessation of gatherings larger than ten people," Plaintiff was "forced by civil authorities to suspend business operations at the Insured Property." *Id.* at ¶¶ 22-24.[2] Plaintiff alleges that the "shutdown of non-essential business was the direct, proximate cause of significant losses and of [Plaintiff] incurring significant expense[.]" *Id.* at ¶ 24.

Plaintiff contends that it experienced a covered loss under the Policy's Business Interruption, Civil Authority, Extended Business Income, and Extra Expense coverages. *Id.* at ¶¶ 18, 21. In particular, Plaintiff alleges that its insured property was "damaged in that the sudden closure of nearby businesses and group gatherings resulted in the cancellation of numerous events for which [Plaintiff's] services has already been booked," resulting in spoilage of perishable food. *Id.* at ¶ 27. It adds that "more likely than not" but "cannot be known for certain," coronavirus has had a "continuous presence" "on or around [Plaintiff's] premises" and "upon information, rendered the premises contaminated, unsafe and unfit for its intended use and therefore caused physical property damage or loss under the policies." *Id.* at ¶ 29. According to Plaintiff, the "presence of

---

[1] The Complaint and Motion contain a copy of the Policy, ECF No. [11-1] at 16-93. For purposes of analysis and ease of reference, citations to policy provisions will be to the page reflected in ECF No. [11-1] rather than to portions contained in the parties' briefings.

[2] The Complaint describes the "Insured Property" as 7460-7462-7464 SW 48th Street, Miami, Florida 33155 and 7458 SW 48th Street, Miami, Florida 33155. *Id.* at ¶ 14.

coronavirus has caused a distinct alteration of the Insured Property which cannot be repaired through a one-time disinfection, and thus has some permanency." *Id.* Plaintiff submitted a claim for business interruption loss, but Defendant denied Plaintiff's claim on April 23, 2020 because the loss at issue did not come within the coverage grants of the Policy and separately was excluded by the Policy's virus and bacteria exclusion. *Id.* at ¶¶ 1, 19; ECF No. [11-2] at 94-100. The Complaint asserts two counts: declaratory relief (Count I) and breach of contract (Count II). ECF No. [11-1] at ¶¶ 43-60.

Regarding Count I, *id.* at ¶¶ 43-54, Plaintiff seeks a declaratory judgment that it (1) sustained a Covered Cause of Loss; (2) there is coverage under the Additional Coverage, Business Income, Extra Expense, and Civil Authority provisions; (3) COVID-19 is not an excluded virus under the Policy's virus and bacteria exclusion; (4) there was "physical damage" to its property and damage to other property under the Policy; (5) the actions of civil authorities were partly based on seeking unimpeded access to the Insured Property; and (6) Defendant is obligated to pay Plaintiff's claim for losses under the Policy. Regarding Count II, *id.* at ¶¶ 55-60, Plaintiff alleges that Defendant breached the Policy by wrongfully denying coverage and failing to pay Plaintiff's claim.

Defendant now moves to dismiss the Complaint with prejudice as to both counts. ECF No. [11]. Defendant makes four general arguments. First, all claims as they relate to damage and losses to the property located at 7458 SW 48th Street, Miami, Florida 33155 should be dismissed because the Policy does not afford coverage for Business Income for that particular location but only Business Personal Property coverage. *Id.* at 1-2, 9-11. Second, as to the remaining properties, Plaintiff's losses and damages are excluded by the Policy's virus exclusion and because there was no "direct physical loss" so as to trigger coverage. *Id.* at 2-3, 11-22. *See also* ECF No. [24] at 1-5 (arguing that the Complaint fails to plead "direct physical loss" under the Policy even if Plaintiff's

3

allegations of the presence of the COVID-19 virus at the Insured Property are non-speculative). Third, the Civil Authority provision was not triggered, ECF No. [24] at 5-7, and fourth, there was no loss under the Policy's spoilage provision. *Id.* at 10.

Plaintiff responds with five main points. First, the Complaint alleges direct physical loss and/or damage. ECF No. [17] at 7-8. Second, there is a covered loss from actions by civil authorities. *Id.* at 9-10. Third, the virus exclusion does not bar business interruption coverage. *Id.* at 10-13. Fourth, Plaintiff alleges proper coverage for all of the insured locations, including 7458 SW 48th Street, Miami, Florida 33155. *Id.* at 13-14. And fifth, Plaintiff has adequately stated claims for declaratory relief and breach of contract. *Id.* at 14-15.

The Motion, accordingly, is ripe for consideration.

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

It is through this lens that the Court considers the Motion and the parties' arguments.

### III.     DISCUSSION

Determining whether Defendant is entitled to dismissal of the Complaint raises two overarching issues. The first is whether the Complaint alleges facts that come within the scope of the Policy's coverage grants. If so, then the second issue is whether coverage is nonetheless barred by a policy exclusion. The Court will examine each issue in turn.

### A.     The Policy

The Schedule of Locations designates the following premises under the Policy: 7460-7462-7464 SW 48th Street, Miami, Florida 33155 ("Premises 1") and 7458 SW 48th Street, Miami, Florida 33155 ("Premises 2"). ECF No. [11-1] at 21. The Commercial Property Coverage Part Supplemental Declarations pages, *id.* at 28-29, reflect that Premises 1 has Business Income and Business Personal Property coverages but that Premises 2 only has Business Personal Property coverage. For both premises, the Declarations list "special" for Covered Cause of Loss. *Id.* "When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 67. Regarding Business Personal Property coverage, the Policy includes Spoilage Coverage. *Id.* at 34-35.

The Policy provides coverage as follows:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

*Id.* at 40.

Under the Business Income (and Extra Expense) Coverage Form, the Policy provides additional coverage for business income, extra expense, and civil authority as follows:

> Business Income: We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage property at premises which are described in the Declaration and for which a

Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 56.

Extra Expense: Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

*Id.*

Civil Authority: When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in respose to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 57.

Extended Business Income: If the the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period . . . Extended Business Inome does not apply to loss of Business Income incurred as a result of favorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

*Id.* at 58.

By endorsement, the Policy also contains an exclusion for losses due to viruses or bacteria

(the "Virus Exclusion") as follows:

This exclusion set forth [below] applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal

7

property and forms or endorsements that cover business income, extra expense or action of civil authority.

We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*Id.* at 66.

### B.      Insurance contract interpretation in Florida

Both parties agree that Florida law governs interpretation of the Policy. *See* ECF Nos. [11] at 12-14; [17] at 12-13; [24] at 7-8. The Court likewise agrees that Florida law controls. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

In determining coverage under an insurance policy, courts look at the policy in its entirety and are required to give "every provision its full meaning and operative effect." *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal quotation marks omitted). Thus, when construing a policy's terms, "the pertinent provisions should be read *in pari materia.*" *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1074 (Fla. 1998)). A court's inquiry begins with "the plain language of the policy, as bargained for by the parties." *Steinberg*, 393 F.3d at 1230 (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Stated differently, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." (citation omitted)). The unambiguous language of the policy is controlling; however, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other

limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Steinberg*, 393 F.3d at 1230.

"[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x. 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976)). In the same vein, policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Hartnett v. Southern Ins. Co.*, 181 So.2 d 524, 528 (Fla. 1965)). Accordingly, exclusionary clauses restricting the insured's coverage are generally disfavored. *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)). "Although the insured bears the burden of proving that a claim is covered by the insurance policy, the 'burden of proving an exclusion to coverage is . . . on the insurer.'" *Scottsdale Ins. Co. v. Klub Kutter's Bar & Lounge, LLC*, No. 17-CV-61321, 2018 WL 1933702, at *3 (S.D. Fla. Apr. 24, 2018); *see also U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983) ("Non-insurability is a defensive matter, with the burden resting on the insurer.").

### C.     The Complaint fails to allege coverage under the Policy

#### 1.     There is no coverage for losses at Premises 2

The Complaint seeks coverage for losses at both premises of the Insured Property. ECF No. [1] at ¶ 14. Plaintiff alleges that the Insured Property "was damaged in that the sudden closure of nearby businesses and group gatherings resulted in the cancellation of numerous events for which [Plaintiff's] services has already been booked. Moreover, part of [Plaintiff's] coverage includes spoilage. [Plaintiff], in order to prepare for its catering events, has to keep perishable food inventory onsite. The sudden cancellation of upcoming events resulted in food spoilage." *Id.* at

¶ 27. Defendant contends there is no coverage for property damage and business income losses at Premises 2. As such, the Complaint should be dismissed with prejudice at least as to any claims directed at that property. ECF No. [11] at 1-2, 9-11. *See also* ECF No. [24] at 10 (arguing that there is no loss under the Policy's spoilage provision). Plaintiff responds that there is coverage for Premises 2 based on "spoilage coverage" and that it "sustained damages relating to spoilage as a direct result of the pandemic-related non-essential business closures and restrictions placed on gatherings of more than ten people." ECF No. [17] at 13-14. Upon review, the Court agrees with Defendant that there is no coverage for losses at Premises 2.

The Policy's Declarations page provides that Premises 2 has Business Personal Property Coverage with a "special" Covered Cause of Loss. ECF No. [11-1] at 29. Based on the Policy's Building and Personal Property Coverage Form, "Spoilage Coverage" may be extended under a "Business Personal Property for Covered Causes of Loss . . . but only with respect to coverage provided by this endorsement." *Id.* at 34. As provided for purposes of this coverage,

> When Special is shown in the Declarations, Covered Causes of Loss means: (1) Breakdown or Contamination by: (a) Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, but only while such equipment or apparatus is at the premsies described in the Declarations; and (b) Contamination by the refrigerant. (2) Power Outage, meaning a change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the premises described in the Declarations, due to conditions beyond your control.

*Id.* at 3.

Further, exclusions are added for this coverage as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: . . . Governmental Orders.

*Id.* at 34-35.

Because the Policy only offers Business Personal Property coverage for Premises 2, the Court agrees with Defendant that Plaintiff cannot be entitled to coverage for this location under the Policy's Business Income (and Extra Expense) Coverage Form. Additionally, although Premises 2 is potentially subject to Spoilage Coverage, based on the Complaint's allegations, coverage is not triggered under this provision. Specifically, there is no "Covered Cause of Loss," as defined above, because even if there was spoilage of perishable food, it was allegedly caused by cancellations, not because of breakdowns or contaminations related to temperature or humidity changes or power outages. Even were that not so, coverage under this provision is nonetheless excluded where Governmental Orders "directly or indirectly" cause the loss. Here, the Complaint alleges that beginning in March 2020, civil authorities prohibited the use and occupancy of non-essential business, which "sudden closure of nearby businesses and group gatherings resulted in" cancellations. ECF No. [1] at ¶¶ 22-27. Thus, any coverage would be excluded on this basis. But more importantly, as addressed below, the Virus Exclusion applies to bar any coverage for losses at all premises at issue. *See id.* at ¶ 29 ("[Plaintiff's] Insured Property has been rendered unusable for its intended purpose by physical forces, to wit, COVID-19 and the actions of civil authorities.").

## 2.      There is no coverage for losses at Premises 1

Having determined that there is no coverage under the Policy for losses at Premises 2, Plaintiff's claims survive only if the Complaint alleges non-excluded coverage for Premises 1. As noted, the Policy provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." ECF No. [11-1] at 40. The Policy defines "Covered Cause of Loss" for purposes of the remaining coverages as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 67. Coverage under the Business Income, Extra Expense, Civil Authority, and Extended

Business Income provisions are implicated only where the losses or damages are "caused by or result from a Covered Cause of Loss." *Id.* at 56-58.

Plaintiff contends that the Complaint alleges a Covered Cause of Loss because there has been "direct physical loss and/or damage" to Premises 1. ECF No. [17] at 7-8 (citing ECF No. [1] at ¶ 29). In particular, COVID-19 allegedly is located on the premises and has contaminated the property, making it unsafe, and has caused a "distinct alteration" of the property. *Id.* Additionally, it maintains that there is a Covered Cause of Loss because of "actions by civil authorities" in terms of issuing stay-at-home and non-essential business closure orders. *Id.* at 9-10. Upon review, the Court is unpersuaded.

First, although the Complaint alleges (with much speculation) that COVID-19 is present on Plaintiff's properties and has somehow caused an undescribed "distinct alteration" to the premises, even accepting those allegations, the Complaint still fails to allege a "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." ECF No. [11-1] at 40. There is no "direct physical loss" where the alleged harm consists of the mere presence of the virus on the physical structure of the premises. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (affirming summary judgment in favor of insurer on restaurant's claim for cleaning and painting costs and loss of business income due to dust and debris from nearby construction activities that impacted the floors, walls, tables, chairs, and countertops, and explaining that under Florida law, "direct physical loss" is the "dimininution of value of something" in which "'[d]irect and 'physical' modify loss and impose the requirement that the damage be actual," and concluding that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'"); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *4-5 (M.D. Fla. Sept. 28, 2020) ("Significantly,

Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage. . . . Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage.").

As explained by another court in denying coverage for a dental office's losses due to COVID-19, "'direct physical loss'—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage" but "Plaintiff simply cannot show any such loss as a result of either inability to access its own office or the presence of the virus on its physical surfaces," noting that the "coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2-3 (N.D. Ill. Sept. 21, 2020). Accordingly, the Complaint fails to allege coverage under the Building and Personal Property Coverage Form, ECF No. [11-1] at 40. As for additional coverages under the Business Income, Extra Expense, and Extended Business Income provisions, *id.* at 56, 58, there is likewise no coverage under those provisions because the Complaint fails to allege "direct physical loss of or physical damage to" the property, a necessary component of coverage under those provisions.

Second, as for coverage under the Civil Authority provision, *id.* at 57, that coverage applies when a Covered Cause of Loss "causes damage to property other than the property at the described premises," provided that (1) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil order as a result of the damage" and (2) the action is taken "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded

access to the damaged property." Here, Plaintiff fails to allege facts triggering coverage under this provision. While Plaintiff alleges that civil authority orders were entered in March 2020 "prohibit[ing] the use and occupancy of non-essential business, thereby affecting and preventing access to the Insured Property" ECF No. [1] at ¶ 22, the Complaint alleges that the civil orders were issued in response to slow the global pandemic, not because of actual damage to any specific property near the premises. *Id.* at ¶¶ 1, 23. *See El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-CV-21525-UU, 2020 WL 7251362, at *7 (S.D. Fla. Dec. 7, 2020) (granting motion to dismiss civil authority coverage claim where "Plaintiffs fail to allege any physical damage to any property in the immediate area. Instead, Plaintiffs generally allege that '[t]he COVID-19 pandemic and the ensuing governmental orders . . . are physically impacting private commercial property in Miami-Dade County'"); *Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) (granting motion to dismiss civil authority coverage claim because plaintiff "does not plead any facts demonstrating that the coronavirus contaminated properties neighboring his businesses, or that a civil authority then prohibited him from entering his insured properties because of any such contamination").

Accordingly, Plaintiff fails to allege facts that come within the Policy's coverage grants. Count II for breach of contract, therefore, fails to state a claim upon which relief can be granted because Plaintiff has not shown that Defendant breached its obligations under the Policy.

### D. The virus exclusion applies even if Plaintiff alleged facts supporting the existence of coverage

Even if Plaintiff were able to allege facts triggering coverage under the Policy, the Virus Exclusion would still apply to bar coverage.

The Virus Exclusion provides that

This exclusion set forth [below] applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited

> to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

ECF No. [11-1] at 66.

According to Defendant, Plaintiff's damages and losses are precluded by the Virus Exclusion. ECF No. [11]. *See also* ECF No. [24] at 7-10. In particular, Defendant contends that the exclusion "unambiguously applies to all allegations in Plaintiff's Complaint" and that "[n]othing in the Complaint suggests damages unrelated to the COVID-19 virus[.]" ECF No. [11] at 19. In its view, "[b]ut for the COVID-19 virus, Plaintiff would not have suffered any loss," and thus, Plaintiff cannot sustain a claim for breach of contract. *Id.* at 21-22.

Plaintiff argues that the Virus Exclusion does not apply because (1) neither the Policy nor the endorsement define "virus," and there is no exclusion for a "pandemic;" (2) COVID-19 is not within the "normal or customary meaning and understanding of the term 'virus'" and the term "virus" is vague and ambiguous; (3) Plaintiff believed that the Virus Exclusion applied only to "known risks and events" and thus it should not be applied because COVID-19 did not exist in humans at the time of entering the Policy; (4) and the exclusion should be "severed" from the Policy. ECF No. [17] at 10-13.

Upon consideration, the Court finds that the Virus Exclusion applies and bars Plaintiff's claims. First, Plaintiff's arguments that the Virus Exclusion is ambiguous and inapplicable because the term "virus" is undefined in the Policy are unsupported and unavailing. This Court previously rejected an identical argument made in a similar COVID-19 business interruption case. *See Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *10 (S.D. Fla. Nov. 2, 2020) ("Further, the Court rejects Plaintiffs' argument that

the virus exclusion is ambiguous because the term 'virus' is undefined in the Policy. 'An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction. 'Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous.'' Plaintiffs offer no basis for construing 'COVID-19' or the 'pandemic' as a non-virus for purposes of this exclusion. Nor can they plausibly do so, as the global spread, proliferation, and activity of 'coronavirus' is the underlying pandemic at issue. Indeed, they cite no cases where courts have determined that COVID-19 is not a virus for purposes of this exclusion.") (internal citations omitted). Although Plaintiff opines that COVID-19 "is no mere seasonal flu, stomach parasite, or anything within the normal or customary meaning and understanding of the term 'virus,'" ECF No. [17] at 10-11, the Virus Exclusion is not restricted to viruses of a specific strain, familiarity, or lethality. Instead, it broadly and unambiguously applies to "any virus" that "induces or is capable of inducing physical distress, illness or disease." And notably, neither party disputes that the coronavirus has these qualities.

Second, the Complaint's allegations squarely reflect that Plaintiff's losses are "caused by or result[] from" COVID-19, a virus that induces or is capable of inducing physical distress, illness or disease. In particular, Plaintiff alleges as follows:

> As a result of Florida's efforts to slow the spread of the SARS-CoV-2 global pandemic[], through recent Executive Orders from Florida government authorities and actions related thereto, [Plaintiff] was forced to cease its regular business operations and sustain business interruption losses. . . .

> Beginning on or about March 2020, Florida and Miami-Dade County civil authorities prohibited the use and occupancy of non-essential businesses, thereby affecting and preventing access to the Insured Property.

> The actions taken by Florida and Miami-Dade civil authorities were based upon the issuance of a national and statewide Public Health Emergency concerning the outbreak of a global pandemic.

Based upon the closure of nearby non-essential businesses and the cessation of gatherings larger than ten people, to which [Plaintiff] regularly provided its catering services, [Plaintiff] was forced by civil authorities to suspend business operations at the Insured Property. This shutdown of non-essential businesses was the direct, proximate cause of significant losses and of [Plaintiff] incurring significant expenses, including extra expense. . . .

COVID-19 is physically impacting public and private property, and physical spaces in cities around the world and the United States. The civil authority's shutdown was motivated by dangerous physical conditions in the area, namely, COVID-19. Numerous civil authorities throughout the country state in their orders that damage to property and business interruption have resulted from COVID-19. . . .

Emerging research on COVID-19 and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe, unuseable, and dangerous. . . . .

The continuous presence of the coronavirus on or around [Plaintiff's] premises (more likely than not, given the pervasive and seemingly ubiquitous scope of the pandemic, though this cannot be known for certain under the circumstances) has, upon information, rendered the premises contaminated, unsafe and unfit for its intended use and therefore caused physical property damage or loss under the policies. . . . The presence of coronavirus has caused a distinct alteration of the Insured Property which cannot be repaired through a one-time disinfection, and thus, has some permanency. [Plaintiff's] Insured Property has been rendered unusable for its intended purpose by physical forces, to wit, COVID-19 and the actions of civil authorities.

ECF No. [11-1] at ¶¶ 1, 22-24, 28,[3] 29.

This Court and other courts across the country have dismissed with prejudice claims based on substantially similar or identical virus exclusions contained within the policies. *See, e.g.*, *Raymond H Nahmad DDS PA*, 2020 WL 6392841, at \*9-10; *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 220CV00401FTM66NPM, 2020 WL 5240218, at \*2 (M.D. Fla. Sept. 2, 2020) (determining that virus exclusion barred dental office's claims for business losses caused by COVID-19 government orders because "the policy expressly excludes insurer liability for loss

---

[3] The Complaint contains misnumbered and out-of-order paragraphs. For instance, the Complaint goes from paragraph 26 to paragraph 28, then to paragraph 27 and then to a different paragraph 28. *See* ECF No. [11-1] at 6-7. The Court cites to both paragraphs 28 listed in the Complaint.

or damage caused 'directly or indirectly' by any virus" and plaintiff's "damages resulted from COVID-19, which is clearly a virus"); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, at *8-10 (E.D. Pa. Dec. 17, 2020) (granting motions to dismiss with prejudice under identical virus exclusion and noting that restaurant plaintiffs' "attempt to circumvent" the exclusion by arguing that the "cause of their losses and damages is the shutdown orders, not the COVID-19 virus" "fails" "whether the cause of the losses was the shutdown orders or the virus"); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020) (dismissing with prejudice under identical exclusion where restaurant plaintiff alleged that government orders "caused a complete and total shutdown" of its business operations and that its losses were due to the government orders, not coronavirus); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) ("the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing."); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, 2020 WL 6503405, at *8 (S.D. Miss. Nov. 4, 2020) (holding that the virus exclusion "precludes all coverage" for plaintiff's alleged COVID-19-related losses); *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882, at *3-4 (M.D.N.C. Nov. 30,

2020) (granting motions for judgment on the pleadings because plaintiffs' claims for damages "incurred due to COVID-19 are unambiguously excluded" under the policies' virus exclusions).[4]

Third, that Plaintiff was not aware of COVID-19 at the time it entered into the Policy and even would not have agreed to the Virus Exclusion "if it had known of the impact of COVID-19," ECF No. [17] at 11, does not reinstate coverage. As Defendant correctly notes, Plaintiff's "subjective understanding of what it believed the insurance contract meant is irrelevant" and, further, Plaintiff fails to cite any legal authority supporting its argument that the Virus Exclusion is inapplicable because COVID-19 did not exist when the Policy was issued. ECF No. [24] at 8-9. Another court has recently considered and rejected Plaintiff's argument and dismissed the complaint under an identical virus exclusion. *See AFM Mattress Co., LLC*, No. 20 CV 3556, 2020 WL 6940984, at *4 (N.D. Ill. Nov. 25, 2020) (rejecting plaintiff's argument as "irrelevant" that COVID-19 did not exist when the policy was entered into, and explaining that the "text of the exclusion" does not support the virus exclusion applying only to viruses that existed at the time the parties entered into the insurance policy because "'any' here means all viruses that induce or are capable of inducing illness or disease" and "[t]here's no temporal limitation in the policy on when a given virus must have come into existence to be included in the virus exclusion, and nothing in the text suggests that the parties intended the exclusion to apply only to viruses that existed at the time they entered into the policy"). The Court finds *AFM Mattress Co.*'s reasoning persuasive and equally applicable here. Finally, Plaintiff's argument that the Virus Exclusion

---

[4] The Court recognizes that in *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 620CV1174ORL22EJK, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020), the court denied a motion to dismiss and rejected the defendant's argument that a differently-worded virus exclusion barred coverage. However, unlike here, that court refused to "make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered" because, in part, the parties failed to provide the court with relevant coverage forms that corresponded to the exclusions.

should be "severed" from the Policy, ECF No. [17] at 12, is unsupported and unclear as to why this relief would be appropriate.

Accordingly, because Defendant has demonstrated that no coverage exists under the Policy for Plaintiff's alleged losses and damages due to the Virus Exclusion, Plaintiff separately fails to state an actionable claim for breach of contract.

### E. Count I is duplicative of Count II and fails to state an actionable claim

Plaintiff seeks a declaratory judgment that there is coverage for its losses under the Policy. *See* ECF No. [11-] at ¶¶ 1, 43-54. "Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim. Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) (internal citation omitted). Declaratory judgment claims that functionally seek adjudication on the merits of a breach of contract claim are duplicative and cannot stand. *See Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, No. 11-21163-CIV, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017); *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV, 2018 WL 3672265, at *3-4 (S.D. Fla. July 24, 2018), *report and recommendation adopted*, No. 18-CV-60562, 2018 WL 4409851 (S.D. Fla. Aug. 16, 2018).

Here, the Court does not find that an actual controversy exists under the Policy as to whether coverage exists for Plaintiff's alleged losses and damages. The claim for declaratory relief, in essence, is that judicial interpretation of the Policy could result in coverage for the same losses that underlie its breach of contract claim. "Because the breach-of-contract claim is dismissed, no

controversy exists. Accordingly, Count [I] is dismissed as well." *Mauricio Martinez, DMD, P.A.*, 2020 WL 5240218, at *3.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Motion, **ECF No. [11]**, is **GRANTED**.

2.  The Complaint, **ECF No. [11-1]**, is **DISMISSED** *with prejudice*.

3.  To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.

4.  The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 8, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record